UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO: 1:18-cr-00198-2 (JEB) |
| | * | |
| GABRIEL BROWN, | * | |
| Defendant | * | |

********

## MOTION TO TO COMPEL DISCOVERY RELATING TO SPECIFIC DNA EVIDENCE OR PRECLUDE TESTIMONY

Gabriel Brown, by his undersigned counsel, respectfully moves this Honorable Court to compel the government to produce discovery relevant to the "most current interpretation guidelines" being used by Signature Science ("the Lab") with respect particularly to one item of evidence, a black glove referenced by the government as MV1-15C2. The government's DNA testimony and exhibits generally and with respect to this item are based on a report that was amended, according to the Lab, to apply the "most current interpretation guidelines." Amended Report of Exam, 2/11/19 at 1.

### A. Information Material and Favorable to Mr. Brown's Defense Must Be Produced

The discovery sought by Mr. Brown is subject to disclosure pursuant to Fed.R.Crim. Proc. 16 and 26.2; Fed. R. Evid. 702. It is also discoverable pursuant to *Brady* and its progeny; the Due Process Protection Act, the Fifth and Sixth Amendment and LCrR 5.1.

The original Lab Report for MV1-15C2, found that the "DNA results provide **no scientific support** for either the inclusion or exclusion of Gabriel Brown as a possible contributor." Report of Examination, 11/26/18 at 17 (emphasis added). This is a significant finding because there is no DNA evidence that links Mr. Brown to the Maxima, the car the government alleges was used to kidnap Mr. Simmons. And, there is no DNA evidence that links Mr. Brown to Mr. Simmons.

Without testing additional DNA or using different technology, the Amended Lab report added confusing verbiage without changing the scientific finding. The Amended report states that "this mixture profile is approximately 1.62 times more likely if the DNA originated from Gabriel Brown and three unknown, unrelated individuals than if the DNA originated from four unknown, unrelated individuals."[1] However, the expert will testify that "such results are not considered to be statistically significant in either including or excluding" Mr. Brown as a contributor.[2] Thus, it is essential for Mr. Brown be able to show that the terminology used in the Amended report is confusing verbiage that does not change the scientific finding that the DNA testing does not include Mr. Brown as a contributor. Indeed, another prosecutor in this district explained that for a likelihood ratio of 3 (slightly higher than 1.62) in "laymen's terms, there is simply not enough information at this time to connect this magazine to Howard."[3]

Moreover, the discovery is essential because it appears that the Lab has once again changed its *interpretation guidelines* seemingly returning to the 2018 guidelines. The Lab should therefore have issued yet another Amended report to reflect that there is "no scientific support" for inclusion or exclusion. However, the government has not produced any amended reports. If in fact, the Lab

---

[1] Amended Report, 2/11/2019 at 8.

[2] Gov Omnibus Reply (ECF 275) at 9-10

[3] *US v Lovelace*, No. 20-cr-0054-ABJ (ECF 152) at 8, n.4:

The DNA results from item 20 (swabs from the magazine of the S&W 9mm pistol found in the backpack in the kitchen) are 3 times more likely if Howard and an unknown, unrelated person are contributors than if two unknown, unrelated people are contributors. *In laymen's terms, there is simply not enough information at this time to connect this magazine to Howard.*

has returned to using *interpretation guidelines* materially identical to the ones used in 2018, the validity of the amended report is seriously undermined or the credibility of the DNA expert is subject to impeachment, or both. Such information is "favorable" to Mr. Brown and must be disclosed.

**B.     Mr. Brown Seeks the Following Discovery:**

1. To the extent that the current interpretation protocols are different from the ones in effect on February 19, 2019, provide all corresponding Amended Reports of Examination for this case that reflect the current guidelines.

2. The interpretation protocols or guidelines contemporaneous to the initial report issued on November 26, 2018.

3. The interpretation protocols or guidelines contemporaneous to the February 19, 2019 Amended report.

4. The most recent interpretation protocols or guidelines.

5. Identify all changes from 2018 to date to interpretation protocols that describe and govern the use of Likelihood Ratio Verbal Equivalent scales in Likelihood Ratio reporting.

6. Produce all documents explaining the reason(s) for the change(s) to include the official approvals by the lab technical leader pursuant to Quality Assurance Standards; and the internal validation of such verbal scales in conjunction with the lab's DNA testing platforms.

7. Provide all documents that support the assertion that "Signature Science changed its protocol based on its assessment of the industry practice in which a majority of labs were eliminating the use of verbal scales and inclusion zones to report results." (ECF 275 at 9).

8. The "Qualitative Equivalent" tables for Likelihood Ratio statistics used by the FBI DNA lab for 2018, 2019 and currently.[4]

---

[4] The *interpretation protocols* used by the FBI DNA lab are relevant because it is believed that the FBI protocols would also report the 1.62 likelihood ratio as uninformative. In addition, the FBI is obligated by statute to establish quality assurance and proficiency testing standards for DNA labs. *See* 34 U.S.C. § 12591. And, the case agent in this case is an FBI Special Agent.

**C.     The Government Has Failed to Produce the Requested Information**

On August 26, 2022, as soon as the government notified counsel that it was relying on an amended report, counsel requested discovery from the government sending an email seeking the above-discovery requests, in a more streamlined fashion. After reviewing the information the government produced on September 1, 2022, Mr. Brown informed the government that the materials were not responsive, explained the deficiencies and provided a more detailed request for discovery.

On September 10, 2002, government counsel responded that the "simple answer" is that Signature Science "is *moving away* from using verbal scales to explain DNA results" and that it had provided all the information it was going to provide.[5] That response is inconsistent with the government's representation that "Shortly after the November 2018 report was issued, Signature Science *changed* its protocol based on its assessment of the industry practice in which a majority of labs were eliminating the use of verbal scales and inclusion zones to report results. . ." Gov Omnibus Reply (ECF 275) at 9. The government's description of the *interpretation guidelines* from something that had been changed in late 2018 to something that was a moving target in 2022 raises red flags particularly once counsel discovered that Signature Science issued a Report of Examination in March 2022 that involved an interpretation guideline that was nearly identical to the equivalency table contained in the 2018 report.[6]

---

[5] Email thread attached as an exhibit.

[6] The table was in the 2022 Report was titled "Verbal Qualifier for Reporting Likelihood Ratios (LR)." It was prepared in *US v Tatum*, 22-CR-00120 (DLF). The defendant is represented by the Office of the Federal Public Defender; the prosecutors are AUSA Ariel Dean and Emory Cole.

### D. In the Alternative, the Court Should Preclude All Evidence Regarding MV1-15C2

Mr. Brown reasserts its argument that introduction on any evidence regarding MV1-15C2 should be excluded because it is not relevant under Fed. R. Evid. 401. In its Omnibus Response the government noted that its "DNA expert is unable to either include or exclude the known DNA profile as a contributor to the mixture." ECF 275 at 9-10. In other words, the evidence is inconclusive. Under FBI Lab Protocols, the evidence is uninformative. Adding a likelihood ratio when testifying to the jury does not change an inconclusive result to a statistically significant one. It just will confuse the jury in a way that violates Mr. Brown's due process rights. Such an indefinite statement can have no "tendency to make a fact more or less probable than it would be without the evidence." Fed.R.Evid. 401(a); *see also United States v. Lewis*, 442 F. Supp. 3d 1122, 1152 (D. Minn. 2020) ("At the smallest number range (e.g., one to ten) the variability is handled by the verbal equivalent of that scale, which states that the results are simply uninformative).[7] To quote the government in *United States v. Lovelace*, No. 20-cr-0054-ABJ (ECF 152) at 8, n.4: "In laymen's terms, there is simply not enough information at this time to connect this magazine to Howard."

Mr. Brown also reasserts his argument that even if minimally relevant, the evidence should be excluded under Rule 403. Indeed, research examining how jurors use either frequencies, likelihood ratios, or error rate information in the context of DNA evidence "has shown that likelihood ratios had the potential to confuse jurors, who may incorrectly treat them like posterior odds, or the

---

[7] The "likelihood ratios presented in court are not intended to be presented as exact numbers, but rather are described in very broad ranges. In MRFL's system the likelihood ratio ranges are very broad: >1,000,000,000; 1,000,000,000 – 1,000 000; 1,000,000 – 1,000; 1,000 – 100, 100 – 10; and 10-1. These ranges are broad enough to overcome minor variation or imprecision in the precise number generated. At the smallest number range (e.g., one to ten) the variability is handled by the verbal equivalent of that scale, which states that the results are simply uninformative."

probability that the defendant is the source." Koehler JJ. *On conveying the probative value of DNA evidence: frequencies, likelihood ratios and error rates*. U Colo L Rev 1996; 67:859–86. Koehler (19) Koehler found that likelihood ratios.

Moreover, it is clear that the danger of confusion extends to government counsel who appears to misunderstand what the 1.62 likelihood ratio means. A likelihood ratio is not the same thing as a likelihood of inclusion. For example, in its surreply, the government argues that the evidence here is admissible even "where the statistical *probability of inclusion* of the defendant is low." Gov Surreply (ECF 279) at 3 (emphasis added). But the 1.62 likelihood ratio with respect to this item does not reflect a *low* probability of inclusion. It reflects *no* probability of inclusion.

That confusion is also clear from the government's own arguments where it incorrectly equates the likelihood ratio with the probability of inclusion even as it explains that its DNA expert will testify that the 1.62 LR does not provide evidence of inclusion.

> The government understands from the DNA expert that when testifying regarding the significance of this statistic for Defendant Brown and any other known profiles that have a low probability of inclusion (such as 1.62 times more likely)**, she will testify that such results are not considered to be statistically significant in either including or excluding the known DNA profile as present in the sample. In other words, the DNA expert is unable to either include or exclude the known DNA profile as a contributor to the mixture**.

Gov Omnibus Reply (ECF 275) at 9-10.

The testimony will be that the 1.62 likelihood ratio neither includes nor excludes but the government is arguing that it reflects inclusion, even if it is a low probability of inclusion.

The Court should exclude the testimony relating to the MV1-15C2 item to the extent that the government fails to produce the requested discovery to allow Mr. Brown to cross-examine the DNA expert adequately. To cross examine the DNA expert and adequately confront her testimony, discovery regarding the changes to the interpretation guidelines, particularly their current status is necessary.

## CONCLUSION

The discovery requested is discoverable under the federal and local rules and *Brady* and necessary to allow adequate confrontation of the DNA expert. The Court should therefore order the government to produce the discovery. In the alternative, the Court should preclude the government from presenting evidence based on a change in the interpretation guidelines that were allegedly amended in late 2018 unless the discovery is produced.

For all the other reasons stated above, the Court should preclude the testimony regarding MV1-15C2. Mr. Brown also respectfully requests that the Court preclude the government from mentioning item MV1-15C2 in its opening statement until the Court decides the instant Motion to Compel and the government produces such discovery.

Respectfully submitted,

/s/
**Carmen D. Hernandez**
Bar No. MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391; (301) 854-0076 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on all counsel of record this 19th day of September, 2022.

>                             /s/ *Carmen D. Hernandez*
>                             **Carmen D.  Hernandez**